UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| United States of America, | § § § | |
| *Plaintiff-Respondent,* | § § | Crim. No. 4:18-cr-00316-1 |
| | § | Civil Action No. 4:23-cv-03539 |
| v. | § § | |
| Winfred Fields, | § § | |
| *Defendant-Movant.* | § § § | |

## **MEMORANDUM AND RECOMMENDATION**

Defendant-Movant Winfred Fields filed a motion to vacate, correct, or modify his sentence under 28 U.S.C. § 2255.  Civ. Dkt. 1; Crim. Dkt. 268. Plaintiff-Respondent the United States of America (the "Government") filed an opposition to Fields's request for relief under Section 2255, Civ. Dkt. 8, Crim. Dkt. 276, and Fields replied, Civ. Dkt. 9; Crim. Dkt. 278.  After carefully reviewing the parties' briefs, the record, and the applicable law, it is recommended that Fields's motion for relief under Section 2255 be denied.  It is further recommended that the Court decline to hold an evidentiary hearing and deny a certificate of appealability.

## **Background**

Fields is serving a 108-month sentence following his convictions for "mail fraud, conspiracy to commit mail fraud and wire fraud, and … aiding and

assisting in preparation and presentation of false tax returns." *United States v. Fields*, 2021 WL 5872501, at \*1 (5th Cir. Dec. 10, 2021) (per curiam). The charges stemmed from Fields's and his business partner Eric Peterson's federal income tax preparation business.

In a fifteen-count superseding indictment, the Government accused Fields of preparing and submitting tax returns falsely claiming that his clients were entitled to tax refunds under a treaty between the United States and the United Kingdom (the "US/UK Treaty").[1]   *See* Crim. Dkt. 44 (superseding indictment). That treaty "established the taxation rules for residents of one country performing work and receiving pay in the other country to avoid double taxation and the prevention of fiscal tax evasion." *Id.* at 2. Article 21 of the treaty addresses taxation of income earned working offshore of either the U.S. or U.K. during a certain period. *Id.* at 2-3. Article 14 addresses taxation of other income earned by non-residents in the U.S. *Id.* at 4.

Fields's clients were not eligible for those refunds, however, as they were non-UK citizens or residents or did not meet the offshore working requirements. *See id.* at 9. According to the Government, Fields's scheme

---

[1] The full name of the treaty is the Convention between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income and on Capital Gains.

involved over 200 tax returns through which Fields and Peterson obtained approximately $3,097,974.19 in fraudulent tax refunds.  *See id.* at 11.

Before trial, the Government asked this Court to inquire into possible conflicts of interest between Fields and one of his defense attorneys, Dwight Jefferson.  Dkt. 56.  After conducting two hearings, the Court accepted Fields's waiver of any potential conflicts of interest resulting from Jefferson's representation.  *See id.* (minute entry for August 16, 2019 hearing); Dkt. 51 (minute entry for July 19, 2019 hearing).

The trial began on January 27, 2020 and lasted twelve days.  At the close of the Government's case-in-chief, Fields moved for acquittal on Counts 1-13 of the superseding indictment, arguing that the Government did not establish intent because Fields had relied on information provided by his clients and the Internal Revenue Service ("IRS").  *See* Crim. Dkt. 180 at 125-33.  The Court denied Fields's motion.  *Id.* at 136.  The jury returned a verdict finding Fields guilty on all fifteen counts.  *See* Crim. Dkt. 204 at 5.

The Pre-Sentence Report ("PSR") computed a total offense level of 35, and a Guidelines range of 168-210 months, based on several enhancements. Crim. Dkt. 204 at 43 (PSR).  Fields objected to enhancements for (a) use of sophisticated means; (b) an offense involving ten or more victims; (c) his "leadership role"; and (d) obstruction of justice.  Crim. Dkt. 195 (written objections); *see also* Crim. Dkt. 206 (addendum stating objections).  At the

3

August 28, 2020 sentencing hearing, the Court sustained Fields's objections to imposing a two-level enhancement for use of sophisticated means under USSG § 2B1.1(b)(10)(C), finding that it did not fit the facts of the case. *See* Crim. Dkt. 228 at 8-10 (transcript). The Court also agreed with Fields that the two-level enhancement for cases involving ten or more victims did not apply because there was only "one major victim in this case, and that's the United States government that was out millions of dollars." Crim. Dkt. 228 at 10; *see also id.* at 15-16. But the Court overruled Fields's objections to other enhancements, namely two-levels for obstruction of justice, USSG § 3C1.1, and four levels for Fields's aggravating role, USSG § 3B1.1(a). *See id.* at 15-20. The Court also applied enhancements for a loss amount of more than $1,500,000, but not more than $3,500,000, USSG § 2.B1.1(b)(1)(I), and abusing a position of trust, USSG § 3B1.3. Crim. Dkt. 204 at 28.

The Court's rulings on enhancements resulted in a final offense level of 31 and a guidelines range of 108 to 135 months. Crim. Dkt. 228 at 20. This Court imposed a low-end sentence of 108 months. Crim. Dkt. 214 (September 9, 2020 judgment).

Fields appealed his conviction, arguing "that his attorney labored under several conflicts of interest, that the district court should have rejected his waiver of his right to conflict-free counsel, and that counsel was ineffective in failing to advise him to accept the Government's plea offer." *Fields*, 2021 WL

4

5872501, at *1.  The Fifth Circuit rejected all those contentions, affirmed the sentence, *see id.* at *3, and denied Fields's ensuing petition for rehearing, Case No. 20-20491, Dkt. 92 (5th Cir. Jan. 4, 2022).

On March 24, 2023 Fields filed a "Memorandum Brief ISO of Motion to Vacate, Set Aside, or Correct Sentence."  Crim. Dkt. 267 ("Memorandum").  After being informed that the Court would not construe the Memorandum as a Section 2255 motion, Fields filed a form motion under 28 U.S.C. § 2255 on September 18, 2023.  Civ. Dkt. 1 ("Motion"); Crim. Dkt. 268.  He followed that with a "Supplement."  Civ. Dkt. 4 ("Supplement").  The Government responded, Civ. Dkt. 8, and Fields replied, Civ. Dkt. 9.  The motion is ripe for resolution.

## Legal standard

Section 2255 sharply curtails the district court's authority to vacate, modify, or correct a sentence.  To obtain relief, a movant must show that (1) the sentence violates the U.S. Constitution or other federal law; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence exceeded the statutory maximum; or (4) the sentence "is otherwise subject to collateral attack ...."  28 U.S.C. § 2255.  "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."  *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam).  "Other types of error may not be raised under

section 2255 unless the defendant demonstrates that the error could not have been raised on direct appeal *and*, if condoned, would result in a complete miscarriage of justice." *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998) (citation omitted).

Ultimately, the movant bears the burden of establishing his claims of error by a preponderance of the evidence. *See Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980). *Pro se* filings are "entitled to the benefit of liberal construction." *Hernandez v. Thaler*, 630 F.3d 420, 426 (5th Cir. 2011) (per curiam). Absent "independent indicia" that the movant's claims likely have merit, an evidentiary hearing is not required. *See United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006).

## Analysis

Fields's motion lists twenty-two grounds for relief—without specifics—but references his previous Memorandum throughout. *See, e.g.,* Civ. Dkt. 1 at 4 ("Please see separate memorandum filed March 24, 2023"); *see also* Crim. Dkt. 267 (March 24, 2023 Memorandum). Fields claims that he intended that Memorandum to serve as a Section 2255 motion. *See* Civ. Dkt. 1 at 11. He now asks the Court to construe his Motion, *id.*, and ensuing Supplement, Civ. Dkt. 4, as amendments that incorporate the Memorandum, Crim. Dkt. 267. *See* Civ. Dkt. 9 at 6.

Construing the three filings together (Crim. Dkt. 267; Civ. Dkts. 1, 4), Fields directly challenges his sentence enhancement for abusing a position of trust, U.S.S.G. § 3B1.3. And he claims, for a host of reasons, that he received ineffective assistance of counsel during the trial, at sentencing, and on appeal.[2]

The Government argues that several of Fields's claims are not cognizable under Section 2255. *See* Civ. Dkt. 8 at 34-36. It also contends that his ineffective assistance of counsel claims fail to satisfy *Strickland v. Washington*, 466 U.S. 668 (1984). *See* Civ. Dkt. 8 at 41-63.

As detailed below, the Government is correct that Fields cannot raise restitution and forfeiture arguments, a direct attack on his sentencing calculation, or a claim that he was entitled to a preliminary hearing via a Section 2255 motion. And Fields's complaints that trial or appellate counsel failed to take specific actions also fail because he cannot show that those omissions were unconstitutionally deficient, prejudiced him, or both. The undersigned therefore declines to address the Government's remaining contentions. Fields's Section 2255 motion should be denied.

---

[2] Fields also attempts to raise new ineffective assistance counsel theories in his reply brief. *See, e.g.*, Civ. Dkt. 9 at 28 (arguing counsel was ineffective for not presenting a video recording at trial depicting solicitation by undercover agent). Those "new issues raised in a Reply are not properly before the Court" and are therefore disregarded. *See Cajeli v. United States*, 2020 WL 1650823, at *6 (E.D. Tex. Mar. 26, 2020) (collecting authorities and refusing to consider new issues raised in *pro se* movant's reply in support of § 2255 motion).

I.    **Fields withdrew several arguments in his reply.**

Fields withdrew numerous arguments in his reply.  Civ. Dkt. 9.  This includes his allegations that counsel improperly failed to object to a constructive amendment and to raise venue- and limitations-related defenses. *See id.* at 25, 34.  Fields also conceded that the Court did not direct a verdict against him.  *Id.* at 34.  And he admits there was sufficient evidence that he conspired with another person.  *Id.* at 30.  Fields also withdrew his jury incompetence claim.  *Id.* at 35.  Based on his concessions and withdrawals, Fields has abandoned the foregoing arguments as a basis for relief.

II.   **Fields's claims related to restitution and forfeiture, sentencing, and the lack of a preliminary hearing are not cognizable.**

The Government argues that several of Fields's arguments are not cognizable under Section 2255.  *See* Civ. Dkt. 8 at 34-35.  The Court agrees that Fields's challenges to restitution and forfeiture, Section 3B1.3 sentencing enhancements, and the lack of a preliminary hearing are barred.

A.    **Section 2255 provides no relief for forfeiture and restitution issues.**

Fields argues that his counsel was ineffective for failing "to bring any defense against the restitution amount in the sentencing hearing or on appeal." Crim. Dkt. 267 at 78.  He further claims that counsel was ineffective for failing to attack the notice of criminal forfeiture.  *Id.*  The Government contends that Section 2255 provides no relief for those claims because they do not challenge

the lawfulness of his incarceration. *See* Civ. Dkt. 8 at 34-35. Fields replies that Section 2255 permits him to attack his conviction on the grounds that his appellate counsel failed to raise forfeiture and restitution claims on direct appeal. *See* Civ. Dkt. 9 at 10.

Binding precedent forecloses Fields's argument. Long ago, the Fifth Circuit held that because Section 2255's plain language "limit[s] relief … to persons in federal custody," it likewise "limit[s] the types of claims cognizable under § 2255 to claims relating to unlawful custody." *United States v. Segler*, 37 F.3d 1131, 1136-37 (5th Cir. 1994) (challenge to counsel's failure to dispute a fine "lies outside of the scope of" Section 2255). Because of that limitation, restitution and forfeiture cannot be challenged under Section 2255—even if couched as ineffective assistance of counsel claims. *See United States v. Hatten*, 167 F.3d 884, 887 (5th Cir. 1999) ("[C]omplaints concerning restitution may not be addressed in § 2255 proceedings."); *United States v. Banguera*, 62 F.3d 393, 1995 WL 449891 (5th Cir. 1995) (per curiam) (citing *Segler*, 37 F.3d at 1136-37) (rejecting challenge to forfeiture of assets as "not cognizable under § 2255"). Fields's complaints about restitution and forfeiture are barred.

### B. Fields's direct challenge to a sentence enhancement is also barred.

Fields also challenges the two-level sentencing enhancement under U.S.S.G. § 3B1.3 for abusing his position of trust as a tax preparer. *See*

Civ. Dkt. 4. The Government argues that, even if this claim were timely, it is not cognizable under Section 2255. Civ. Dkt. 8 at 35. The Court agrees.

"A district court's technical application of the Guidelines does not give rise to a constitutional issue cognizable under § 2255." *Segler*, 37 F.3d at 1134; *see, e.g.*, *United States v. Williamson*, 183 F.3d 458, 461-62 (5th Cir. 1999) (propriety of career offender sentencing enhancement was not cognizable under Section 2255). Section 2255 therefore provides no relief for challenges to sentencing enhancements under U.S.S.G. § 3B1.3. *See Wyrick v. United States*, 2011 WL 6288032, at *3 (N.D. Tex. Dec. 14, 2011) (applying *Segler* to reject challenge to § 3B1.3 enhancement ); *United States v. Climmons-Johnson*, 2018 WL 6179508, at *13 (S.D. Tex. Nov. 27, 2018) (applying same principle to reject challenge to enhancement for "abuse of public trust" under Section 2255), *adopted by* 2019 WL 311953 (S.D. Tex. Jan. 24, 2019). Fields's direct challenge to the abuse-of-trust enhancement therefore fails.

### C.    Fields was not entitled to a preliminary hearing.

As another contention, Fields faults appellate counsel for failing to challenge his lack of preliminary hearing. *See* Civ. Dkt. 1 at 10; Civ. Dkt. 9 at 10. It is unclear whether Fields has abandoned that contention, given his concession that "the claim regarding a preliminary hearing fails to raise a constitutional issue because it would be considered a frivolous claim on direct appeal." Civ. Dkt. 9 at 10.

10

Regardless, the contention is frivolous because Fields was charged by indictment. Crim. Dkt. 1 (initial indictment); Crim. Dkt. 44 (superseding indictment). Accordingly, he had no right to a preliminary hearing. *See* Fed. R. Crim. P. 5.1(a)(2) ("If a defendant is charged with an offense other than a petty offense, a magistrate judge must conduct a preliminary hearing *unless … the defendant is indicted.*" (emphasis added)). The lack of a preliminary hearing provides no basis for relief.

## III.   Fields's ineffective assistance of counsel claims are meritless.

The remainder of Fields's motion accuses his attorneys of providing ineffective assistance at multiple stages of his case. Those arguments fail because Fields has not shown that his counsel was deficient or prejudicial.

### A.   Legal standard: Ineffective assistance of counsel

Ineffective assistance of counsel claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). To obtain relief, a defendant first must show that his attorney's representation was deficient. *See Strickland*, 466 U.S. at 687. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Hinton v. Alabama*, 571 U.S. 263, 274 (2014) (per curiam) (quotation omitted).

Under *Strickland*'s first prong, counsel's performance must be compared to "an objective standard of reasonableness, mindful of the strong presumption of adequacy." *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997). "'A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire [process] with obvious unfairness.'" *Id.* (quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983)).

The second prong of *Strickland* requires proof that the attorney's "deficient performance prejudiced the defense." 466 U.S. at 687. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial ...." *Id.* Unless both deficiency and prejudice are shown, "it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

## B.    Ineffective assistance of trial counsel

Fields argues that his various trial counsel performed deficiently because they: (1) failed to assert or introduce evidence in support of certain defenses, (2) failed to make selective prosecution and prosecutorial misconduct arguments, (3) and failed to object to the PSR. Several of Fields's contentions are wholly conclusory. None of his claims merits relief.

### 1.     Failure to raise and support certain defenses

Several of Fields's complaints feature his theory that he followed the IRS's instructions when completing the fraudulent tax returns. *See, e.g.*, Crim. Dkt. 267 at 69, 86. According to Fields, his reliance on the IRS's advice negates the *mens rea* element of the offenses, which require willfulness or specific intent to defraud. *See id.* at 69-71; *see also* Dkt. 115 at 21, 23, 26, 32 (jury instructions).

Fields featured that theory during the jury trial. *See, e.g.*, Crim. Dkt. 180 at 148-49 (Fields testifying that he sought the IRS's advice). Yet the jury rejected it by finding him guilty on all counts. Crim. Dkt. 116. In particular, his convictions for aiding and assisting the preparation and presentation of false tax returns (Counts 3 through 15), *see id.* at 1-4, reflect the jury's finding that Fields did not "honestly believe[] that he was not violating the tax laws ...." Dkt. 115 at 32 (instructing that "[a] defendant does not act willfully if he in good faith believes that his actions comply with the law.").

But Fields now claims that his trial attorneys should have proffered yet more evidence supporting this theory. And he contends that this theory would support viable "public authority" and entrapment-by-estoppel defenses, which his counsel did not raise. *See* Crim. Dkt. 267 at 69-71. Neither contention supports relief.

First, nothing substantiates Fields's contention that his trial counsel wrongly failed to obtain or present any evidence. For instance, Fields claims that counsel should have subpoenaed the IRS for a recording "verify[ing] that the IRS instructed [Fields] on what to do." *Id.* at 32. But the Government contends, and the undersigned agrees, that Fields has not shown that any such recording existed or would have made a difference in his case. Civ. Dkt. 8 at 42-43. Fields insists that the prosecutor's reference to a "vague recording" during trial reflects that the IRS possessed recordings that "would have revealed that the IRS verbalized to Fields and Peterson that [the US/UK treaty] applied to their tax clients." Civ. Dkt. 9 at 18 (citing "trial's closing transcript"). That quote alludes to recordings that *Fields* or his partner made and presented at trial—not anything that the IRS possessed. Crim. Dkt. 183 at 45. In fact, portions of a recorded conversation between Fields and an IRS agent were played *by the defense* at trial. *See* Crim. Dkt. 181 at 23-30 (playing Defendant's Exhibit 164).

Fields also claims that his trial attorney failed to subpoena a taxpayer who had contacted the IRS to verify his refund and was told that his return was completed properly. Crim. Dkt. 267 at 33. As support, however, Fields says "see Trial Exhibit"—without identifying any exhibit. *Id.* But "to establish that counsel was ineffective due to a failure to … discover and present evidence, the petitioner must … state with specificity what … specific evidence

14

would have been disclosed, and how the evidence would have altered the outcome of the trial." *Rose v. Johnson*, 141 F. Supp. 2d 661, 691 (S.D. Tex. 2001) (collecting Fifth Circuit authority). Fields has made none of those showings. And nothing in the record indicates that this unnamed taxpayer would have supported Fields's defense or that the taxpayer's hypothetical testimony would have changed the outcome of his trial. Fields's contentions about his counsel's investigation and use of evidence do not satisfy *Strickland*.

Second, Fields did not show that his counsel was ineffective for failing to raise an entrapment-by-estoppel or public authority defense. "[T]he public authority defense requires the defendant reasonably to rely on the actual, not apparent, authority of the government official … to engage the defendant in covert activity." *United States v. Sariles*, 645 F.3d 315, 319 (5th Cir. 2011). Similarly, the entrapment by estoppel defense "is applicable when a government official or agent actively assures a defendant that certain conduct is legal and the defendant reasonably relies on that advice and continues or initiates the conduct." *Id.* at 318 n.2 (quoting *United States v. Spires*, 79 F.3d 464, 466 (5th Cir. 1996)).

Fields does not show, nor does the record reflect, that either defense was meritorious. To the contrary, the Government cites ample evidence that Fields made material misrepresentations to the IRS related to his clients' returns. *See* Civ. Dkt. 8 at 48 (citing Crim. Dkt. 180 at 133-36). For example, Fields

15

prepared one tax return falsely stating that a UK national (Thomas Travis) was working on an offshore vessel, even though Fields knew that he was living and working onshore in Alabama. *See* Dkt. 176 at 70-72, 80-82, 86 (Travis's testimony); *see also, e.g.,* Dkt. 124-6 at 9 (Government's Exhibit 1-26a; incorrectly reporting that Travis worked on vessel). In another instance, Fields told the IRS that a Brazilian client (Igor Castro) was a UK national and thus eligible for an exemption under the US/UK treaty. *See* Crim. Dkt. 182 at 9 (Fields's testimony on Castro's return, where he incorrectly claimed Castro was a UK national); *see also* Crim. Dkt. 127-8 (Government's Exhibit 1-61a; return). Fields also prepared a tax return requesting a refund for a client (Brian Daly) who he represented worked for a different company and on a different vessel than what Daly had told him. *See* Crim. Dkt. 175 at 122-24; *see also* Crim. Dkt. 120-8 (Government's Exhibit 1-3a; return).

Fields cannot blame any IRS official for his own misstatements and misrepresentations to the IRS that led to his conviction. Nor has Fields marshaled evidence suggesting otherwise. Given the lack of evidence supporting Fields's proposed defenses, counsel's choice to forego raising them was neither deficient nor prejudicial. *See United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the

16

attorney raised the issue."); *see also Williams v. United States*, 2010 WL 11435486, at *3 (S.D. Tex. July 1, 2010) (counsel was not deficient for failing to raise public authority defense if defendant "was unable to meet the required elements to establish" the public authority defense); *Correa v. United States*, 2012 WL 4027177, at *3 (W.D. Tex. Sept. 12, 2012) (failure to investigate or raise entrapment defense was not prejudicial where there was a "lack of merit supporting" the defense).

Fields's contentions about the IRS statements and supposed approval were heavily litigated at trial and rejected by the jury. He has not shown that this was due to ineffective counsel.

### 2.   Failure to argue selective prosecution

Fields next argues that his trial counsel was ineffective for failing to pursue a selective prosecution argument. *See* Crim. Dkt. 267 at 84-86. He contends that, while "it is well documented that … larger Caucasian-owned firms had filed the same style of returns" as Fields's small, Black-owned firm, they were not similarly prosecuted. *See id.* at 84-85. But as the Government responds, Fields's bald assertions are not evidence. Civ. Dkt. 8 at 57.

"The decision to prosecute one person and not another is a proper exercise of executive discretion with which [the Fifth Circuit is] reticent to interfere." *United States v. Webster*, 162 F.3d 308, 333 (5th Cir. 1998). There is a "presumption that the government made its decision to prosecute in good

17

faith and in a nondiscriminatory manner." *Id.* at 334. The selective prosecution defense thus presents a "heavy burden" to overcome this presumption. *See United States v. Ramirez*, 765 F.2d 438, 439 (5th Cir. 1985) (quotation omitted). "To establish that the government has engaged in unconstitutionally discriminatory selective prosecution, a defendant must": (1) make a "prima facie showing that he has been singled out for prosecution but others similarly situated of a different race were not prosecuted[,]" and (2) "demonstrate that the discriminatory selection of him for prosecution is invidious or in bad faith …." *Webster*, 162 F.3d at 333-34 (citing *United States v. Armstrong*, 517 U.S. 456, 465 (1996)).

Nothing indicates that the requirements for a selective prosecution defense were met, such that counsel should have raised it. Fields merely speculates—without evidentiary support—that his firm was singled out while similarly-situated tax firms were not prosecuted. *See* Crim. Dkt. 267 at 85. Likewise, Fields cites no evidence substantiating that an unidentified witness could have testified that one of those firms had completed similar tax returns and obtained refunds under the US/UK treaty. *Id.* at 32. Moreover, such "complaints of uncalled witnesses are disfavored as a source of *Strickland* habeas review." *United States v. Harris*, 408 F.3d 186, 190 (5th Cir. 2005) (quotations omitted).

18

Even assuming that other tax firms had submitted returns with similar deficiencies, that alone would not establish that Fields's firm was improperly "singled out." "Due to limited resources of the government, there will always be some tax evaders and tax protestors who elude prosecution by the government. This factor is not sufficient to show selective prosecution." *United States v. Tibbetts*, 646 F.2d 193, 195-96 (5th Cir. 1981); *United States v. Rice*, 659 F.2d 524, 527 (5th Cir. 1981) (noting that "the government lacks the means to investigate every suspected" tax violation (quotation omitted)).

Nor does Fields show that his prosecution was "motivated by a discriminatory purpose." *Armstrong*, 517 U.S. at 465 (quoting *Wayte v. United States*, 470 U.S. 598, 608 (1985)). He merely offers a quote that he attributes to the IRS Commissioner: "it's just easier and cheaper to audit the poor." Crim. Dkt. 267 at 85. Fields cites no source for this alleged quote. Nor does he attempt to show how that quote has any bearing on his prosecution.

In short, Fields has not demonstrated a valid basis for a selective-prosecution argument, much less that counsel was deficient for not raising it. *See Samson v. United States*, 2008 WL 11506616, at *3 (W.D. Tex. Aug. 7, 2008) (rejecting similar contention where the defendant offered no "evidence that the government's prosecution was unfairly motivated and he was singled out for prosecution among others similarly situated"); *Cervantes v. United States*, 2015 WL 12527263, at *6 (S.D. Tex. June 22, 2015) ("[S]ince Petitioner

19

has failed to demonstrate he is entitled to relief on his selective prosecution claim, his attorney was not ineffective by failing to argue it at trial."). Although Fields requests discovery on the issue, "[t]he justifications for a rigorous standard for the elements of a selective-prosecution claim thus require a correspondingly rigorous standard for discovery in aid of such a claim." *Armstrong*, 517 U.S. at 468. To obtain discovery, a defendant must present "some evidence tending to show the existence of the essential elements of the defense, discriminatory effect and discriminatory intent." *See id.* (quotation omitted). Fields presented no such evidence. His *Strickland* claim premised on a selective-prosecution theory should be rejected.

### 3.   Failure to argue prosecutorial misconduct

Fields argues that his trial counsel was ineffective for not making a prosecutorial misconduct argument or moving for a mistrial on that basis. *See* Crim. Dkt. 267 at 48-53. According to Fields, the prosecutor (1) presented the US/UK tax treaty incorrectly to the grand jury to obtain an indictment, *id.* at 50-51; (2) should have dismissed the case when Fields's attorneys received IRS audit notice letters, *id.* at 51-52; and (3) displayed a trial exhibit that omitted pertinent information, *see id.* at 58. The Government responds that Fields has not substantiated that the alleged misconduct occurred or would support a mistrial. Civ. Dkt. 8 at 45. The record supports the Government's position.

20

To show prosecutorial misconduct, Fields must establish that (1) the prosecutor's conduct was improper and (2) that the party was prejudiced by the improper conduct. *See United States v. Duffaut*, 314 F.3d 203, 210 (5th Cir. 2002). Neither prong is satisfied here.

For instance, Fields argues that the prosecutor omitted certain language from Article 14 of the US/UK tax treaty to the grand jury to obtain an indictment. *See* Crim. Dkt. 267 at 50, 56; *see also* Civ. Dkt. 9 at 26. But there is no indication that the omitted language applied to him or that including it would have changed the grand jury's decision to indict him.

In addition, Fields accuses prosecutors of wrongdoing because his attorneys received IRS audit notices during the trial, which he alleges impacted their ability to represent him. *See* Crim. Dkt. 267 at 51, 57. But Fields has conceded "that conclusory allegations about the prosecution being involved in the audit letters received by two of his counsel during the pretrial phase is insufficient to raise a constitutional issue." Civ. Dkt. 9 at 26. Instead, Fields pivots to arguing that his trial attorneys should have investigated the audit notices more thoroughly. *See id.* But "[a] defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). Fields offers no such specifics.

Fields also contends that counsel should have challenged the prosecutor's use of an exhibit that allegedly omitted material information. *See* Crim. Dkt. 267 at 58. That exhibit was a June 21, 2010 email from Alan Duncan, who had referred clients to Fields. *See* Crim. Dkt. 267-1 at 23-26; Crim. Dkt. 181 at 121 (discussing Duncan). But the exhibit submitted to the jury is identical to the one that Fields attaches. *Compare* Crim. Dkt. 182 at 148 (offering Exhibit 102), *and* Crim. Dkt. 170-14 (Exhibit 102), *with* Crim. Dkt. 267-1 at 23-26. It omitted nothing to which anyone could have objected.

Nor has Fields shown that counsel improperly failed to move for a mistrial based on prosecutorial misconduct. "It is oft-recognized that the decision not to seek a mistrial is frequently a strategic one." *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008). Such a "conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Id.* (quotations omitted). To show that the decision not to move for a mistrial was prejudicial, the movant must establish that the court would have granted a mistrial or would have reversibly erred by denying it. *See id.* No such showing has been made, foreclosing Fields's contentions.

4.   Failure to object to the PSR

Fields next argues that counsel was ineffective for failing to attack the PSR. *See* Crim. Dkt. 267 at 72-77. As the Government notes, Fields's

sentencing counsel *did* object to the PSR's calculation. *See* Civ. Dkt. 8 at 50 (citing Crim. Dkt. 195). Indeed, several of counsel's objections were sustained. *See* Crim. Dkt. 228 at 8-10 (sustaining objections to USSG § 2B1.1(b)(10)(C) and (b)(2)(A)(i)).

Fields does not specify what his trial counsel should have done differently. At most, he appears to "dispute" the loss amount in his PSR, which was "more than $1,500,000, but not more than $3,500,000 ...." *See* Dkt. 267 at 74; Dkt. 204 at 28 (PSR). Fields claims that he "was not charged with or indicted for $1.5 or $3.5 million as relevant conduct." Dkt. 267 at 75. But the PSR calculated a $3,097,974.19 loss amount to the U.S. Treasury, which is the exact same figure in the indictment. Dkt. 204 at 14; Dkt. 44 at 11 (alleging that Fields and his "co-conspirator fraudulently-obtained $3,097,974.19 in tax refunds from the IRS"). Fields's claim that "the Prosecutor indicted and charged him with no loss" is thus inaccurate. *See* Dkt. 267 at 75. He has not articulated a valid basis for relief.

     5.    <u>Fields's remaining complaints about trial counsel are wholly conclusory.</u>

Several of Fields's other theories should be rejected outright as wholly conclusory. "Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *United*

*States v. Holmes*, 406 F.3d 337, 361 (5th Cir. 2005) (quotation omitted).  That aptly describes Fields's stray contentions.

Those contentions include Fields's listing "accusatory instrument" as a basis for relief, without explanation.  *See* Crim. Dkt. 267 at 21; Civ. Dkt. 1 at 13.  They also include Fields's bald assertion that "[t]rial counsel's failure … to adequately advise defendant of element of the offenses, potential defenses, to initiate plea bargaining negotiations before advising defendant to plead guilty constitutes ineffective assistance."  Crim. Dkt. 267 at 33-34.  And they include Fields's complaints about his attorneys arriving late or not at all for certain appointments.   *See id.* at 45.   Those unsubstantiated and undeveloped assertions come nowhere close to justifying relief.

Fields also claims that counsel was ineffective for not obtaining a transcript of the grand jury proceedings.  *See id.* at 33.  But his motion does not explain why that was unconstitutionally deficient or would have altered the result of this case.

In addition, Fields accuses counsel of agreeing to certain motions in limine that "destroyed [Fields's] defense that he never created or participated in the alleged scheme to defraud the government."  *Id.* at 86.  Fields does not specify what these motions in limine were, much less why they supposedly had such a drastic effect.  He merely cites an email that he sent in 2010 discussing efforts to obtain tax refunds.  *See id.* (citing Crim. Dkt. 267-1 at 26).  Fields

24

also mentions an incident where one of his attorneys refused to aid his co-counsel in examining a witness. *See id.* at 87. He does not show how that action was deficient or prejudicial. Fields's bare assertions do not justify relief.

> 6. The cumulative error doctrine does not excuse Fields's failure to meet his burden.

As a last resort, Fields invokes the cumulative error doctrine. *See* Crim. Dkt. 267 at 31. "Under the cumulative error doctrine, relief may be obtained only when constitutional errors so fatally infect the trial that they violate the trial's fundamental fairness." *United States v. Stephens*, 571 F.3d 401, 412 (5th Cir. 2009) (internal quotation marks omitted). "[E]rrors that did not occur can have no cumulative effect." *United States v. Carter*, 2017 WL 2271474, at *14 (S.D. Tex. May 22, 2017) (citing *United States v. Moye*, 951 F.2d 59, 63 n.7 (5th Cir. 1992)); *see also United States v. Hall*, 455 F.3d 508, 520 (5th Cir. 2006) ("Our clear precedent indicates that ineffective assistance of counsel cannot be created from the accumulation of acceptable decisions and actions."); *Westley v. Johnson,* 83 F.3d 714, 726 (5th Cir. 1996) ("Meritless claims or claims that are not prejudicial cannot be cumulated, regardless of the total number raised."). Because Fields has not shown that his trial counsel was unconstitutionally deficient in any respect, there is no error to consider cumulatively. His *Strickland* claims, whether considered singly or cumulatively, should be rejected.

## C.     Ineffective counsel on appeal

Fields also contends that his appellate counsel was unconstitutionally ineffective. He argues that counsel deficiently briefed the conflict-free counsel argument and failed to raise other meritorious issues. All those contentions are governed by the same two-prong *Strickland* test. *See Smith v. Murray*, 477 U.S. 527, 535-36 (1986). Fields's arguments about his appellate counsel falter under that standard.

### 1.     Failure to adequately brief conflict-free counsel issue

Fields argues that his appellate counsel deficiently briefed the issue of whether he validly waived his right to conflict-free counsel. *See* Crim. Dkt. 267 at 46, 80-83. The Fifth Circuit found that "Fields has not shown that any conflict was sufficient to impugn the judicial system or render Fields's trial inherently unfair, such that his right to conflict-free counsel was unwaivable." *Fields*, 2021 WL 5872501, at *3. The Government thus asserts that the issue was already decided on direct appeal and may not be relitigated. *See* Civ. Dkt. 8 at 37. But Fields maintains that his appellate counsel was so ineffective that there "is a countervailing equitable consideration to allow the validity of his waiver of his right to conflict free counsel to be raised" in this habeas action. Civ. Dkt. 9 at 11.

Fields identifies no cognizable deficiency in the appellate briefing. He contends that his appellate counsel did not properly explain the "per se rule"

under *United States v. Cancilla*, 725 F.2d 867 (2nd Cir. 1983), which found a *per se* conflict of interest where defendant's trial counsel was engaged in the criminal activity at issue. *See* Dkt. 267 at 82. But Fields's appellate attorney did argue for a *per se* rule, citing the exact same Second Circuit decision. *See* Dkt. 267-1 at 70 n.17 (citing *Cancilla*).

Fields also contends that counsel should have argued that the conflict-free representation was unwaivable "given Jefferson's actual conflict." Civ. Dkt. 9 at 35-36. But his appellate attorney also made this argument. Crim. Dkt. 267-1 at 69 (arguing that "a court must reject an attempted waiver" when an actual conflict exists and that Jefferson "had multiple, serious, actual conflicts of interest").

In short, appellate counsel's briefing was not deficient. And there is no indication that briefing it differently would have led the Fifth Circuit to reverse. There is no basis for relief under *Strickland*.

### 2.    Failure to raise certain issues on appeal

Fields also argues that his appellate counsel was ineffective for failing to raise other issues on appeal. *See* Crim. Dkt. 267 at 34-36. But Fields only discusses two issues: actual innocence as to the *mens rea* element and the application of his sentencing guidelines.

"Under well-established principles, appellate counsel need not raise every nonfrivolous ground of appeal available in order to be effective." *Higgins*

*v. Cain*, 720 F.3d 255, 265 (5th Cir. 2013) (quotation omitted); *see also Jones v. Barnes*, 463 U.S. 745, 751 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). "Instead, appellate counsel's failure to raise an argument on direct appeal will be considered ineffective only when counsel fails to perform in a reasonably effective manner." *Higgins*, 720 F.3d at 265 (quotation omitted). And "[t]o establish prejudice, [Fields] must demonstrate that counsel failed to present issues upon which [he] was likely to prevail on appeal." *West v. Howell*, 1995 WL 29338, at *2 (5th Cir. 1995) (per curiam).

Fields complains that appellate counsel "proceeded as he wished" instead of following Fields's instruction. *See* Crim. Dkt. 267 at 35. That alone does not mean appellate counsel was ineffective. *See McCrae v. Blackburn*, 793 F.2d 684, 688 (5th Cir. 1986).

Specifically, Fields argues that appellate counsel should have challenged the sufficiency of evidence supporting a *mens rea,* or criminal intent, finding. *See* Crim. Dkt. 267 at 22-29, 89; Civ. Dkt. 9 at 13. But the standard of review for such a challenge is highly deferential to the jury's verdict: "whether, considering the evidence and all reasonable inferences in the light most favorable to the prosecution, any rational trier of fact could have found the

28

essential elements of the crime beyond a reasonable doubt." *See United States v. Danhach*, 815 F.3d 228, 235 (5th Cir. 2016) (quotation omitted).

Nothing indicates that an appellate challenge to the intent element would have succeeded. Quite the opposite, the jury heard and was entitled to credit evidence that Fields willfully deceived the IRS by submitting fraudulent tax returns—including the examples detailed above. *See supra* Part III.B.1. Faced with such substantial evidence, Fields's appellate attorney reasonably chose to forgo a fruitless sufficiency-of-evidence challenge to the findings of criminal intent. *See Whatley v. Davis*, 2018 WL 3438939, at \*11 (N.D. Tex. July 17, 2018) (appellate counsel's failure to raise sufficiency-of-the-evidence claim on appeal did not constitute ineffective assistance where "the record contains substantial evidence against Petitioner").

Field's complaints about counsel's failure to make a sentencing disparity argument fare no better. *See* Crim. Dkt. 267 at 37. As Fields acknowledges, his sentence was higher than "defendant[s] convicted of a like or similar crime" because of "*the enhancements of the PSR.*" *Id.* at 38 (emphasis added). And apart from attaching a copy of trial counsel's sentencing memorandum, Fields does not explain how or why the enhancements that this Court applied were erroneous, such that any would have made successful appellate challenges. *See id.* (citing Crim. Dkt. 267-1 at 32-47). Fields's allegations of ineffective appellate counsel are meritless.

29

## IV.   <u>Fields has not demonstrated actual innocence.</u>

Fields also appears to recast his *mens rea* contention as an actual innocence claim.  *See* Crim. Dkt. 267 at 22.  He has not met the high threshold to demonstrate his actual innocence.

"Any sufficiency of the evidence claim should have been brought on direct appeal and is not cognizable in a § 2255 motion."  *United States v. Gomez*, 2011 WL 13351516, at *11 (S.D. Tex. May 1, 2011) (citing *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995)).  A defendant may, however, raise the issue on collateral review "if he can demonstrate either (1) cause and prejudice, or (2) that he is 'actually innocent' of the crime for which he was convicted."  *United States v. Cantu-Flores*, 2009 WL 497157, at *5 (S.D. Tex. Feb. 26, 2009) (citing *United States v. Torres*, 163 F.3d 909, 911 (5th Cir. 1999)).

To establish actual innocence, Fields must show that in light of all the evidence, "it is more likely than not that no reasonable juror would have convicted him …."  *See Schlup v. Delo*, 513 U.S. 298, 327-28 (1995).  "'[A]ctual innocence' means factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 623 (1998).  This "standard imposes a heavy burden on a petitioner."  *Torres*, 163 F.3d at 912.

As the Government notes, *see* Dkt. 8 at 38, Fields merely rehashes his unsuccessful arguments at trial.  For example, he largely relies on an IRS investigation report from 2013 concluding that a specific refund claim for one

of Fields's clients, though ultimately denied, showed "no indicators of fraud." Crim. Dkt. 267 at 25 (citing Dkt. 267-1 at 12-22). But that report was presented at trial, and the jury weighed it alongside other evidence. *See* Crim. Dkt. 175 at 182-84 (testimony of IRS investigator Michelle Brown, who conducted that investigation). Moreover, the characterization of one tax claim for a single client as non-fraudulent hardly absolves Fields's criminal liability for preparing and submitting several years of fraudulent claims for *other* clients, like the examples above. *Compare id.* at 184-85 (Brown only reviewed one client's returns for a single tax year), *with supra* Part III.B.1.

Fields also makes a series of unsupported arguments for why he believes he is innocent. For example, Fields argues that there is "clearly" no *mens rea* because he "went through many measures in attempting to get the clients their" tax refunds. Crim. Dkt. 267 at 23. That Fields's obtained some financial benefit for his clients does not negate his intent to defraud. And, as discussed *supra* Part III.B.1, substantial evidence supported the jury's finding of criminal intent. Fields's actual innocence argument fails.

## V.     Fields is not entitled to an evidentiary hearing or a certificate of appealability.

Fields is not entitled to an evidentiary hearing on any of his assertions. No hearing is necessary when the record "is clearly adequate to dispose fairly of the allegations" that counsel rendered ineffective assistance. *See United*

*States v. Smith*, 915 F.2d 959, 964 (5th Cir. 1990). That is the case here because the record forecloses Fields's ineffective assistance of counsel claim. *See supra* Part III. An evidentiary hearing also would not change the conclusion that Section 2255 cannot provide relief on Fields's restitution and foreclosure, sentencing guidelines, or preliminary hearing arguments. *See supra* Part II. Likewise, Fields has not made even the barest showing of actual innocence. *See supra* Part IV. Accordingly, an evidentiary hearing is unwarranted.

Section 2255 actions also require a certificate of appealability to proceed on appeal. 28 U.S.C. § 2253(c)(1). A district court must issue or deny a certificate of appealability when entering a final order denying relief. Rules Governing Section 2255 Proceedings for the U.S. District Courts, Rule 11.

To obtain a certificate of appealability, Fields must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). That, in turn requires him to show "that reasonable jurists would find [this Court's] assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 276 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). No reasonable jurist would debate the conclusion that Fields's contentions fail to state a basis for relief under Section 2255. This Court should deny a certificate of appealability *sua sponte*. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

### Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Winfred Fields's Section 2255 motion (Civ. Dkt. 1, 4; Crim. Dkt. 268) be **DENIED.**

It is further **RECOMMENDED** that Fields's request for an evidentiary hearing be **DENIED**, and that a certificate of appealability also be **DENIED.**

**The parties have fourteen days from service of this Report and Recommendation to file written objections.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.  *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).**

Signed on June 22, 2026 at Houston, Texas.

Yvonne Y. Ho
United States Magistrate Judge